IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| RUSSELL R. SUTTON, individually and on behalf of all others similarly situated | : : : : : | Civil Action File No. |
| Plaintiff, | : : | |
| vs. | : : | |
| HENNECOLD STORAGE, INC., | : : : : | Jury Trial Demanded |
| Defendant. | : | |

## COMPLAINT

Plaintiff Russell R. Sutton, brings this Complaint against Hennecold Storage, Inc., and shows the Court as follows:

### INTRODUCTION

1.

This is a case brought under the Fair Labor Standards Act.

2.

In addition to his federal causes of action, Plaintiff asserts pendent state law claims which arise out of the same set of operating facts as his federal claims. These are (1) breach of contract, (2) quantum meruit and (3) promissory estoppel.

3.

At all times material hereto, Hennecold systematically truncated its compensation of Sutton--as well as its compensation of all similarly situated employees that Sutton seeks to represent—by failing to correctly convert the hours and minutes its employees worked into proper digital values for pay purposes. Hennecold's improper calculation resulted in every hourly employee being paid less than the amount earned for every week worked by such employees.

4.

In addition to this claim of pay truncation, Sutton brings his own claims for 1) improper deduction of thirty minutes each day for a break when the company knew or should have known that he often did not take such a break; and 2) his misclassification as exempt during certain periods of his employment.

5.

Plaintiff asks this Court to certify a collective of similarly situated individuals, to wit, all hourly warehouse workers who worked for Hennecold within three years prior to the filing of this Complaint and who consent in writing to their inclusion in a collective action

6.

Sutton's Consent to Serve as a Plaintiff Representative in this FLSA Action is filed herewith as Exhibit "A".

7.

Sutton requests collective relief because all other hourly warehouse workers were treated in a similar manner with respect to their compensation.

**JURISDICTION AND VENUE**

8.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA § 16(b), 29 U.S.C. § 216(b), 28 U.S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

9.

This Court has supplemental jurisdiction over Sutton's state law claims set forth herein arising under Georgia law in accord with 28 U.S.C. §1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy.

10.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Hennecold's principal place of business is located in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

## THE PARTIES

11.

Sutton resides in Fulton County, Georgia.

12.

At all times material hereto, Hennecold operated a warehouse whose principal place of business is located at 6150 Xavier Drive, N.W., Atlanta, GA 30336.

13.

Hennecold is a corporation organized under the laws of the State of Georgia.

14.

Hennecold can be served via its registered agent Fred D. Wolf at 6150 Xavier

Drive, N.W., Atlanta, GA 30336.

15.

Hennecold is subject to the personal jurisdiction of this Court.

**INDIVIDUAL COVERAGE**

16.

At all times material hereto, Sutton was "engaged in commerce" as an

employee of Hennecold as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

17.

Specifically, Sutton regularly performed warehouse work at the directions of

Hennecold.

**ENTERPRISE COVERAGE**

18.

At all times material hereto, Hennecold has been an "enterprise engaged in

commerce or in the production of goods for commerce" as defined in FLSA, §

7(a)(1), 29 U.S.C. § 207(a)(1).

19.

During 2012, Hennecold had two or more "employees engaged in commerce"
as defined by 29 U.S.C. § 203(s)(1)(A).

20.

During 2013, Hennecold had two or more "employees engaged in commerce"
as defined by 29 U.S.C. § 203(s)(1)(A).

21.

During 2014 Hennecold had two or more "employees engaged in commerce"
as defined by 29 U.S.C. § 203(s)(1)(A).

22.

During 2015, Hennecold had two or more "employees engaged in commerce"
as defined by 29 U.S.C. § 203(s)(1)(A).

23.

During 2012, Hennecold had two or more "employees handling, selling or
otherwise working on goods or materials that have been moved in or produced for
commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

24.

During 2013, Hennecold had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

25.

During 2014, Hennecold had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

26.

During 2015, Hennecold had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

27.

During 2012, Hennecold had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

28.

During 2013, Hennecold had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

29.

During 2014, Hennecold had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

30.

During 2015, Hennecold had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

31.

At all times material hereto, Hennecold has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

### Statutory Employer Allegations

32.

Sutton worked for Hennecold as a warehouse lead from March 2012 through October 5, 2015.

33.

At all times material hereto, the work Sutton performed was integral to Hennecold's business purpose (i.e., a warehouse).

34.

At all times material hereto, Hennecold was an "employer" of Sutton as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

35.

At all times material hereto Sutton was an "employee" of Hennecold as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

### FLSA MisClassification Allegations

36.

At all times material hereto, Sutton was not exempt from the maximum hour requirements of the FLSA by reason of any exemption.

37.

At all times material hereto, Hennecold did not employ Sutton in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

38.

At all times material hereto, Hennecold did not employ Sutton in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

39.

At all times material hereto, Hennecold did not employ Sutton in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

40.

At all times material hereto, Hennecold did not employ Sutton in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

41.

Sutton did not have the primary duty of managing Hennecold or a customarily recognized department of subdivision thereof within the meaning of 29 CFR 541.100(a).

42.

During the majority of Sutton's work time, he operated equipment and worked alongside Hennecold's laborers to move merchandise within Hennecold's warehouse.

43.

Sutton did not interview potential new employees for Hennecold.

44.

Sutton did not make recommendations regarding candidates for employment with Hennecold that Hennecold afforded any particular weight.

45.

Sutton did not have the authority to hire employees for Hennecold.

46.

Sutton did not train employees for Hennecold.

47.

Sutton did not set or adjust the pay rates of employees for Hennecold.

48.

Sutton did not set or adjust the work hours of employees for Hennecold.

49.

Sutton did not maintain the production or sales records for use in supervision or control of employees for Hennecold.

50.

Sutton did not handle complaints and grievances of employees for Hennecold.

51.

Sutton did not determine discipline employees for Hennecold.

52.

Sutton recorded the quantities of materials utilized into Defendant's tracking system for upper management to track.

53.

Sutton did not provide for the safety and security of the employees of Hennecold.

54.

Sutton did not plan or control any budget for Hennecold.

55.

Sutton did not monitor or implement legal compliance measures for Hennecold.

56.

At all times material hereto, Sutton did not have the authority to fire employees for Hennecold.

57.

At all times material hereto, Sutton did not make recommendations regarding hiring, firing, advancement, promotion or any other change of status of other employees to which Hennecold attached particular weight.

58.

Despite not having the primary duty of exempt work, Sutton was misclassified as exempt during portions of his employment with Hennecold.

**Improper Deduction for Breaks**

59.

At all times material hereto, Hennecold auto-deducted thirty minutes from each of Sutton's work days.

60.

Hennecold knew, or should have known in the exercise of reasonable management practices, that Sutton did not take lunch or other break approximately fifty percent of the time.

61.

As a result of this auto-deduction, Sutton's pay was reduced below that agreed upon and, in certain weeks, resulted in a reduction of the overtime pay required.

**Improper Pay Computation Allegations**

62.

At all times material hereto, Hennecold recorded the work time of Sutton and all similarly situated warehouse workers.

63.

At all times material hereto, Hennecold's Employee Time Records expressed each employee's work time in hours and minutes divided by a colon.

64.

At all times material hereto, Hennecold regularly and systematically truncated the compensation it paid Sutton and all similarly situated warehouse workers by failing to properly convert such horological values into correct digital values (*i.e.,* time expressed by hours and hundredths of an hour and divided by a decimal point) for pay purposes.

65.

At all times material hereto, Hennecold regularly and systematically improperly converted such horological values into incorrect digital values by substituting a

decimal point for the colon and by no further adjustment to account for the difference between minutes (i.e., by sixtieths of an hour) and the hundredths of an hour used in a digital value.

66.

For example, during the week that ended August 28, 2013, Sutton (without taking into account the auto-deduction for a break) worked for Hennecold a total of fifty-six hours and thirty-nine minutes (*i.e.,* a horological value that is expressed as 56:39).

67.

The horological value expressed as 56:39 is equivalent to the digital value of 56.65 hours.

68.

Hennecold converted the horological value of Sutton's work time for the week ending on August 28, 2013 by merely replacing the colon of the horological value with a decimal, resulting in the incorrect digital value of 56.39 hours/minutes in lieu of the correct value of 56.65 hours.

69.

An employee who is not exempt from the FLSA's overtime requirements and who works 56 hours and 39 minutes for his employer in a workweek should be

compensated by such employer for 40.0 hours at his regular rate and for an

additional 16.65 hours at an overtime rate equivalent to one and one half of his

regular rate.

70.

Hennecold paid Sutton for the work he performed in the week ending August

28, 2013 at his regular rate for 40.0 hours and at his overtime rate for 16.39 hours.

71.

Hennecold thus truncated Sutton's pay for the work he performed in the week

ending August 28, 2013 by .26 hours at his overtime rate.

72.

By way of further example, during the week that ended September 4, 2013,

Sutton worked for Hennecold a total of fifty-five hours and fifty-six minutes (i.e., a

horological value expressed as 55:56).

73.

The horological value expressed as 55:56 is equivalent to the digital value of

55.93 hours.

74.

An employee who is not exempt from the FLSA's overtime requirements and who works 55:56 for his employer in a workweek should be paid for 40.0 hours at his regular rate and for 15.93 hours at his overtime rate.

75.

Hennecold paid Sutton for the work he performed in the week ending September 4, 2013 at his regular rate for 40.0 hours and at his overtime rate for 15.56 hours.

76.

In doing so, Hennecold truncated Sutton's compensation for the work he performed in the week ending September 4, by the value of .37 hours at his overtime rate.

77.

During each week within the three years immediately preceding this action, Hennecold repeated this pattern of improper compensation calculation for Sutton and all similarly situated employees.

## COUNT I - FAILURE TO PAY OVERTIME

78.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

79.

At all times material hereto, Sutton was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

80.

During his employment with Defendant, Sutton regularly worked in excess of 40 hours each week.

81.

Defendant failed to pay Sutton at one-and-one-half times his regular rate for all time worked in excess of 40 hours in any week during the entire period of his employment.

82.

Defendant willfully failed to Sutton at one and one half times his regular rate for work in excess of 40 hours in any week during the entire period of his employment.

83.

Sutton is entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

84.

As a result of the underpayment of overtime compensation as alleged above, Sutton is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

85.

As a result of the underpayment of overtime compensation as alleged above, Sutton is entitled to his litigation costs, including his reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

### COUNT II - COLLECTIVE ACTION ALLEGATIONS AS TO THE TRUNCATION OF ACTUAL TIME WORKED

86.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

87.

At all times during the three years prior to the filing of this Complaint, Hennecold violated 29 U.S.C. § 207 with respect to all hourly workers it employed by failing to properly convert the horological value of the hours they worked each

week into correct digital values for pay computation purposes in the same manner as alleged above with respect to Sutton.

88.

All hourly warehouse workers whom Hennecold employed within the three years prior to the filing of this action are "similarly situated" to Sutton within the meaning of FLSA § 16 (b), 29 U.S.C. § 216(b).

89.

Hennecold is liable pursuant to 29 U.S.C. § 201 *et seq*. to all individuals similarly situated to Sutton for unpaid overtime wages, attorneys' fees and costs of litigation, and other such equitable and legal relief that this Court finds proper.

90.

The proposed collective of individuals similarly situated to Sutton should be defined as "all individuals who have worked as hourly employees for Hennecold Storage in the three years prior to the filing of this suit through the present."

91.

All such individuals similarly situated to Sutton would benefit from the issuance of a Court supervised Notice of Present Lawsuit and opportunity to consent in writing to their inclusion as plaintiffs in this lawsuit pursuant to 29 U.S.C. § 216(b).

92.

All such individuals similarly situated to Sutton are known to Hennecold, are readily identifiable, and can be located through the records of Hennecold.

## COUNT III - BREACH OF CONTRACT AS TO SUTTON

93.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

94.

Sutton and Hennecold were parties to an oral contract of employment (hereafter "the Contract") from on or about March 2012 through October 5, 2015.

95.

The Contract provided that Hennecold would pay Sutton for work that was performed by Sutton on behalf of and for the benefit of Defendant.

96.

Defendant's failure to pay Sutton for 30 minutes of work performed during each auto-deducted lunch break and Defendant's failure to pay Sutton for all hours worked because of the improper conversion of his hours worked to digital values constitute a material breach of the contract.

97.

As the direct and foreseeable result of this breach, Sutton has sustained and continues to sustain damages in an amount to be proved at trial.

## COUNT IV – QUANTUM MERUIT AS TO SUTTON

98.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

99.

At all times relevant, Sutton served as a Warehouse Lead for Defendant.

100.

Sutton's service as a Warehouse Lead for Hennecold as described above was valuable to Defendant.

101.

Hennecold requested Sutton's service as a Warehouse Lead.

102.

Hennecold knowingly accepted Sutton's service as a Warehouse Lead.

103.

The receipt of Sutton's services as a Warehouse Lead for Hennecold without compensation would be unjust.

104.

Sutton expected to be compensated at the time he provided his services as a Warehouse Lead.

105.

Sutton is entitled to a recover from Hennecold the reasonable value of the services he provided as a Warehouse Lead for Defendant--in an amount to be determined at trial—for the time he spent working through auto-deducted breaks and for the work hours unpaid because of the improper conversion of hours worked into digital values.

### COUNT V - PROMISSORY ESTOPPEL AS TO SUTTON

106.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

107.

In or about March 2012, Hennecold promised to pay Sutton in return for Plaintiff's service as a Warehouse Lead for them.

108.

Hennecold should have reasonably expected that Sutton would induce action in reliance of said promise, i.e., serve as a Warehouse Lead for Defendant.

109.

Hennecold's promise induced Sutton to act in reliance thereof, i.e., to serve as a Warehouse Lead for Defendant, to his detriment.

110.

Sutton's service as a Warehouse Lead for Hennecold conferred a benefit on Defendant.

111.

Hennecold failed to pay Sutton in accordance with their promise.

112.

Sutton relied on Defendant's promise.

113.

Sutton's reliance on Defendant's promise was reasonable.

114.

Injustice can only be avoided by enforcement of Defendant's promise.

115.

Sutton is entitled to a recover from Hennecold the reasonable value of the services he provided as a Warehouse Lead for Defendant--in an amount to be determined at trial—for the time he spent working through auto-deducted breaks and for the work hours unpaid because of the improper conversion of hours worked into digital values.

WHEREFORE, Plaintiff respectfully prays:

1.     That Plaintiff's claims be tried before a jury;

2.     That Plaintiff be awarded an amount to be determined at trial against Defendant in unpaid overtime wages due under the FLSA, plus an additional like amount in liquidated damages;

3.     That Plaintiff Sutton have and recover judgment against Defendant for the pendent State claims herein asserted in amounts to be proved at trial

4.     That Plaintiff be awarded his costs of litigation, including his reasonable attorneys' fees from Defendant;

5.     That the Court issue a Notice of Present Lawsuit to all individuals similarly situated to Plaintiff, allowing all such similarly-situated individuals to file their written consent to join this action as Plaintiff;

6.     For such other and further relief as the Court deems just and proper.

Respectfully submitted,

3100 Centennial Tower
101 Marietta Street
Atlanta, Georgia 30303
(404) 979-3150
(404) 979-3170 (f)
kevin.fitzpatrick@dcbflegal.com
charlesbridgers@dcbflegal.com

**DELONG CALDWELL BRIDGERS & FITZPATRICK, LLC**

*/s/Charles R. Bridgers*
Charles R. Bridgers
Ga. Bar No. 080791

*/s/ Kevin D. Fitzpatrick, Jr.*
Kevin D. Fitzpatrick, Jr.
Ga. Bar No. 262375

**Counsel for Plaintiff**